**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. ROBERT CARL SHARP, Defendant. | No. 15-CR-31-LRR  **ORDER** |

*TABLE OF CONTENTS*

*I.    INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*
*II.   RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . *2*
*III.  STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
*IV.   RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . *3*
    *A.  Information Included in State Warrant Application* . . . . . . . . . . . . . . . *4*
    *B.  Information Not Included in State Warrant Application* . . . . . . . . . . . *7*
    *C.  Information Included in Federal Warrant Applications* . . . . . . . . . . . . *8*
*V.    ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *A.  Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
    *B.  Conflicting Information About Pipe Dreamz* . . . . . . . . . . . . . . . . . *11*
    *C.  Representations of C.G.'s Reliability* . . . . . . . . . . . . . . . . . . . . . *14*
*VI.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

*I. INTRODUCTION*

The matter before the court is "Defendant Robert Sharp's Objections to the Report and Recommendation of the Magistrate Court" ("Objections") (docket no. 74), timely filed in response to United States Chief Magistrate Judge Jon S. Scoles's Report and

Recommendation (docket no. 70),[1] which recommends that the court deny Defendant's Amended Motion to Suppress ("Motion") (docket no. 64).

## II. *RELEVANT PROCEDURAL BACKGROUND*

On March 31, 2015, the grand jury returned a three-count Indictment (docket no. 3) charging Defendant with: (1) conspiracy to manufacture and distribute a controlled substance in violation of 21 U.S.C. § 846; (2) possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1); and (3) possession with intent to distribute, and aiding and abetting the possession with intent to distribute, a controlled substance in violation of 21 U.S.C. § 841(a)(1). On July 1, 2015, Defendant filed an initial Motion to Suppress (docket no. 56). On August 12, 2015, the government filed a "Resistance to Defendant Sharp's Motion to Suppress" ("Resistance") (docket no. 63). On August 13, 2015, Defendant filed the Motion after receiving additional discovery not addressed in the first Motion to Suppress. On August 14, 2015, the government filed a Resistance to Defendant Sharp's Amended Motion to Suppress (docket no. 67), fully incorporating the arguments made in the Resistance. On August 17, 2015, Judge Scoles held a hearing on the Motion. *See* August 17, 2015 Minute Entry (docket no. 68). Defendant appeared in court with his attorneys, Joel Schwartz and Nathan Swanson. Assistant United States Attorney Dan Chatham represented the government. On August 31, 2015, Judge Scoles issued the Report and Recommendation, which recommends that the court deny the Motion. On September 12, 2015, Defendant filed the Objections. The Report and Recommendation and the Objections are fully submitted and ready for decision.

---

[1] The Report and Recommendation analyzed both Defendant Sharp's Amended Motion to Suppress and Defendant Wayne Christopher Watkins's Amended Motion to Suppress (docket no. 60). The court addressed the Report and Recommendation as to Defendant Watkins in a separate Order. *See* September 16, 2015 Order (docket no. 82).

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *See Lothridge*, 324 F.3d at 601. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND[2]

On March 31, 2014, Special Agent Jessie Whitmer of the "Iowa Division of Narcotics Enforcement" ("DNE") became involved in a drug investigation targeted at Defendant's alleged distribution of synthetic cannabinoids, commonly referred to as "Spice." At that time, Detective Jerry Blomgren of the Iowa City Police Department and DEA Drug Task Force was also involved in an active investigation of Defendant.

---

[2] The court finds the following facts from the state mobile tracking warrant application marked as Government's Exhibit 1 (docket no. 62-2), the federal search warrant applications marked as Government's Exhibit 2 (docket no. 62-3), debriefing documents relating to certain confidential informants (docket no. 64-2) and Special Agent Jessie Whitmer's testimony at the suppression hearing on August 17, 2015 (docket no. 75).

3

### A. *Information Included in State Warrant Application*

Agent Whitmer's involvement in the investigation began after the DNE notified him that a woman, C.G.[3], called DNE headquarters and asked to speak to an agent in the Iowa City area. Agent Whitmer first spoke with C.G. on March 31, 2014 by telephone. C.G. expressed a willingness to provide information to Agent Whitmer in hopes of resolving a pending charge against her for driving while revoked. Agent Whitmer told C.G. that he could not promise a resolution of her pending charge but that, if she asked the prosecutor to call Agent Whitmer, he would explain that she was assisting law enforcement.

C.G. proceeded to give Agent Whitmer information about Defendant and his alleged drug-related activities. C.G. explained that she had dated Defendant for approximately one year and nine months and that, during their relationship, he ordered bulk shipments of "Spice" from China and packaged it with Wayne Watkins in Watkins's basement. C.G. said that Defendant had previously stored "Spice" in a storage unit but had transitioned to storing all his "Spice"—consisting of "thousands of bags"—in Watkins's basement.

C.G. also mentioned that Defendant owned a head shop called Pipe Dreamz in Iowa City. She said that Defendant would only keep a small amount of "Spice" at Pipe Dreamz, if he kept any there at all. But she stated that Defendant had previously stored and sold "Spice" at a different head shop that he once owned in Peoria, Illinois.

C.G. told Agent Whitmer that Defendant maintained residences in both Center Point, Iowa, and in Peoria, Illinois, and that Defendant's mother lived in Illinois. C.G. said that Defendant generally spent Monday through Thursday in Iowa, but spent the weekend in Illinois. According to C.G., Defendant would transport 500 to 1,000 bags of "Spice" from Iowa to Illinois when traveling and would drop off portions of the shipment in towns between Center Point and Peoria. C.G. also claimed that Defendant had "at least two hundred thousand dollars" stored at his mother's home. C.G. further stated that

---
[3] C.G. disclosed her full name to Agent Whitmer, and her name was included in the warrant application that was evaluated by the Iowa District Court.

4

Defendant was on "probation or parole" in Illinois at the time of her conversation with Agent Whitmer and that she was unsure whether Defendant's travel between Iowa and Illinois violated the terms of the probation or parole.

Before concluding the first telephone call, C.G. told Agent Whitmer that Defendant sent her Facebook messages describing how much money Defendant had made on certain days. C.G. said she did not believe that he made the amount of money he described from selling merchandise at Pipe Dreamz.

Approximately one hour after the first phone call concluded, C.G. called Agent Whitmer to provide additional information. In response to questions from Agent Whitmer, C.G. provided Defendant's birth date and told Agent Whitmer that Defendant had recently purchased an orange Land Rover and owned a Chevrolet Camaro and a maroon Cadillac. C.G. also stated that Defendant previously kept his money in a safe deposit box before storing his money at his mother's home. C.G. told Agent Whitmer that Defendant left a note for the police in the abandoned safe deposit box that said "Fuck You."

Later on March 31, C.G. sent Agent Whitmer photographs of Facebook messages between Defendant and C.G. In a message sent by Defendant on January 30, 2014, he stated: "making big dough again today. Sold a 350 pipe and 4500 in other orders." In another message, Defendant stated: "We did 6 grand today," referring to money earned at Pipe Dreamz. Following his correspondence with C.G., Agent Whitmer received a business card for Pipe Dreamz from Detective Blomgren. The business card identified "Bobby and Tashia" as the store's owners.

On April 1, 2014, C.G. again contacted Agent Whitmer. In a text message, she provided Agent Whitmer with the names of two persons that purchased "Spice" from Defendant: Markie McClary and Bridget Hart. On April 2, 2014, Agent Whitmer drove to Defendant's residence in Center Point, Iowa. At the residence, Agent Whitmer saw numerous vehicles, including an orange Land Rover registered to Defendant, a black

Chevrolet Camaro registered to Defendant and a black Jeep Cherokee registered to Mark McClary. Agent Whitmer proceeded to drive to Wayne Watkins's residence in Cedar Rapids, Iowa, where he saw a gold Oldsmobile registered to Jessica Leroy. According to Defendant's Facebook page, Defendant and Jessica Leroy were in a relationship at that time. Later in the afternoon of April 2, Agent Whitmer saw Defendant's orange Land Rover parked in front of Pipe Dreamz in Iowa City.

On April 3, 2014, Agent Whitmer applied for a warrant in the Iowa District Court for Johnson County, seeking to install a mobile tracking device onto Defendant's orange Land Rover. The warrant application relied on the information listed above and two additional items: (1) reference to "conflicting information" from early March 2014 about whether Pipe Dreamz was selling "Spice"; and (2) summarized audio from an attempted controlled buy at Pipe Dreamz on March 21, 2014, wherein a confidential source (referred to as "CS #2014-002") was told by an unidentified Pipe Dreamz employee that he "would have to come back around 4 p.m.," that the employee "looked everywhere [for "Spice"], but he assumed 'He' took it with him last night" and that, because of recent raids, "'He' was probably just 'Being smart.'" Agent Whitmer was not involved with the investigation in early March of 2014 when the conflicting reports surfaced about Pipe Dreamz selling "Spice." Likewise, Agent Whitmer was not involved with the attempted controlled buy on March 21, 2014; however, he did review the audio of the attempted transaction, which was recorded on a body wire worn by CS #2014-002.

Attachments B-1 and B-2 to the warrant application addressed the reliability of C.G. and CS #2014-002. In Attachment B-1, Agent Whitmer identified C.G. as "a concerned citizen with no reason to fabricate . . . information" and denoted that he had corroborated C.G.'s information when he "located a residence in Center Point, Iowa that was associated with [Defendant]"; when he "located a residence in Cedar Rapids, which had a vehicle parked there [that was] registered [to Defendant's] girlfriend"; and when he "observed

6

[Defendant's] vehicle at 'Pipe Dreamz.'" Regarding C.G., the judge evaluating the warrant application altered the form document to reflect that C.G. had no "known" reason to fabricate information and to state that C.G. knows the information she provided because of her "personal relationship with [Defendant]." In Attachment B-2, Agent Whitmer identified CS #2014-002 as "a concerned citizen with no reason to fabricate . . . information" and denoted that the source's information had been corroborated by law enforcement because "CS #2014-002 has advised officers that different locations are selling ["Spice"] and on March 21, 2014, CS #2014-002 was able to purchase ["Spice"] from one (1) of the three[4] (4) locations attempted." Regarding CS #2014-002, the judge evaluating the warrant application altered the form document to state that the source knows the information he provided because of "personal observation and conversation with suspects." Based on the information contained in the warrant application, the Iowa District Court issued the mobile tracking warrant.

### B. Information Not Included in State Warrant Application

Although Agent Whitmer included information provided by CS #2014-002 in the warrant application, Agent Whitmer had no personal interaction with CS #2014-002 and lacked knowledge about the source's identity or the context of the source's involvement in the investigation. Agent Whitmer was further unaware that another confidential source, CS #2014-003, attempted a controlled buy at Pipe Dreamz on March 10, 2014 but was told by staff at the shop that it did not sell "Spice." The information about CS #2014-002 that Agent Whitmer included in the warrant application came exclusively from his review of the audiotapes from the source's attempted controlled buy at Pipe Dreamz on March 21, 2014 and from information provided by Detective Blomgren that CS #2014-002 had participated in attempted controlled buys at numerous locations in Iowa City. Although

---

[4] The reference to "three" locations was a typographical error in the application. Agent Whitmer later confirmed that CS #2014-002 had participated in four attempted controlled transactions on March 21, 2014.

7

Agent Whitmer lacked specific actual knowledge about CS #2014-002's assistance with law enforcement, the Iowa City Police Department maintained records containing CS #2014-002's biographical information, known drug use (synthetic drugs), reason for cooperating (cash payment) and March 5, 2014 statements to Detective Blomgren that CS #2014-002 had previously bought "Spice" at Pipe Dreamz but believed they had quit selling it. Similar records also detailed the unsuccessful controlled buy involving CS #2014-003, wherein the source was told that Pipe Dreamz does not sell "Spice." The records pertaining to CS #2014-002 and CS #2014-003 were prepared by Detective Blomgren.[5] Agent Whitmer learned of the specific information regarding CS #2014-002 during conversations with Detective Blomgren after the warrant had been issued.

### C. *Information Included in Federal Warrant Applications*

On May 6, 2014, Detective Blomgren submitted applications to United States Chief Magistrate Judge Jon S. Scoles for federal search warrants. In support of the applications, Detective Blomgren described the progress of his investigation into Defendant and Pipe Dreamz, which began in February 2014. On February 24, 2014, Detective Blomgren received information that a suspect arrested in Illinois had implicated a person in Iowa named "Robert" as the source of the controlled substances found in the suspect's possession. On February 27, 2014, another individual in Illinois further implicated "Robert Sharp" of Iowa City as being a source for controlled substances. On March 5, 2014, Detective Blomgren met with CS #2014-002[6] and received information that the source had previously purchased "Spice" at Pipe Dreamz but that the shop "may have recently stopped selling" the substance. Two other sources identified by Detective

---

[5] The records were filed by Defendant as an exhibit (docket no. 64-2) in support of the Motion. The exhibit consists of five pages of CS #2014-002 and other informants' debriefing, but the pages do not appear to derive from one singular document. Detective Blomgren's signature appears on one of the five pages comprising the exhibit, implying his involvement in preparing the entirety of the records.

[6] Called "CS2" in the federal warrant applications.

Blomgren, CS #2014-003[7] and Michael Christenson, implicated Pipe Dreamz and "Bob" in the selling of controlled substances. While CS #2014-003 attempted a controlled buy at Pipe Dreamz on March 10, 2014, it was unsuccessful. Detective Blomgren had prior information that Defendant owned Pipe Dreamz. The warrant applications also outlined Agent Whitmer's interactions with C.G. and the information derived from the mobile tracking warrant. Based on this and other information gathered later in the investigation, Judge Scoles issued search warrants for the following: (1) Pipe Dreamz; (2) Defendant's residence in Center Point, Iowa; (3) Watkins's residence in Cedar Rapids, Iowa; (4) the orange Land Rover registered to Defendant; (5) the black Chevrolet Camaro registered to Defendant; and (6) a storage unit in Center Point, which law enforcement learned about while monitoring Defendant's vehicle pursuant to the mobile tracking warrant.

## V. ANALYSIS

Defendant's Motion and Objections argue that "certain false, misleading, and reckless allegations and material omissions" render the state warrant constitutionally deficient under *Franks v. Delaware*, 438 U.S. 154 (1978). Objections at 1. Therefore, according to Defendant, the *Franks* violations demand that the fruits of the state warrant be excluded from the probable cause analysis for the federal search warrants. Absent the information from the state warrant, Defendant argues that there was no probable cause to support the federal search warrant for the storage unit in Center Point, Iowa. "Transcript of August 17, 2015 Motion Hearing Proceedings" ("Transcript") (docket no. 75) at 3. Defendant concedes, however, that the deficiencies in the state warrant would not materially impact the probable cause supporting the other federal search warrants. *Id*. The government concedes that, if *Franks* violations are found, they would invalidate the federal search warrant's probable cause as to the storage unit in Center Point. *Id*. at 7.

Defendant objects to Judge Scoles's following legal conclusions from the Report and

---

[7] Called "CS3" in the federal warrant applications.

Recommendation: (1) that Agent Whitmer's reference to conflicting reports about whether Pipe Dreamz was selling "Spice" adequately accounted for facts otherwise omitted from the application; and (2) that Agent Whitmer did not recklessly misrepresent C.G. as a reliable informant. *See* Objections at 2, 4.

### A. *Applicable Law*

"A search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001) (citing *Franks*, 438 U.S. at 171).

> To prevail on a *Franks* claim the defendants must show: (1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit; and (2) that the affidavit's remaining content is insufficient to establish probable cause. The same analysis applies to omissions of fact. The defendant must show: (1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.

*Reinholz*, 245 F.3d at 774. For a statement to be made with reckless disregard for the truth, the court must assess "whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *United States v. Conant*, ___ F.3d ___, ___ 2015 WL 5023715, at *2 (8th Cir. Aug. 26, 2015) (quoting *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011) (quotation marks omitted). "Recklessness, however, may be inferred from the fact of omission of information from an affidavit . . . when the material omitted would have been clearly critical to the finding of probable cause." *Id.* (quoting *McIntyre*, 646 F.3d at 1114) (quotation marks omitted). "*Franks* does not apply to negligent misrepresentations" or omissions. *Id.* at *4 (quoting *United States v.*

10

*Coleman*, 349 F.3d 1077, 1085 (8th Cir. 2003)) (quotation marks omitted).

### B. *Conflicting Information About Pipe Dreamz*

In Paragraph 1 of the warrant application, Agent Whitmer stated: "In early March 2014, officers received conflicting information regarding 'Pipe Dreamz' selling synthetic marijuana and also information that they have stopped selling synthetic marijuana." Government's Exhibit 1 at 6. Defendant claims that this "uninformative and conclusory" statement fails to adequately compensate for the omission of specific facts suggesting that Pipe Dreamz stopped selling "Spice"; most notably, the fact of CS #2014-003's unsuccessful controlled buy wherein he was told that Pipe Dreamz doesn't sell "Spice." Objections at 2-3. Defendant observes that Agent Whitmer received information about CS #2014-002's attempted controlled buy from Detective Blomgren and that he included the information in his warrant application. *Id.* at 3. Because Agent Whitmer received *some* information from Detective Blomgren, Defendant appears to argue that Agent Whitmer had a responsibility to elicit additional information that would have revealed CS #2014-003's failed controlled buy and information from both CS #2014-002 and CS #2014-003 that Pipe Dreamz no longer sold "Spice." *Id.* at 2-3. Consistent with this theory, Defendant characterizes Agent Whitmer's lack of actual knowledge of CS #2014-003's unsuccessful controlled buy as willful blindness amounting to a "reckless disregard for the truth." *Id.* at 3. Defendant therefore objects to Judge Scoles's conclusion that the omission of CS #2014-003's failed controlled buy and the statements that Pipe Dreamz no longer sold "Spice" were not intentionally or recklessly misleading and were not, in any event, material to the finding of probable cause. Report and Recommendation at 20.

The court overrules Defendant's objection. For an omission to support a *Franks* claim, the affiant must have intentionally or recklessly omitted the information to make the application misleading, and the omission, if added to the application, must defeat probable

11

cause. *See Reinholz*, 245 F.3d at 774. The court finds that the omission alleged by Defendant fails both prongs of this analysis.

There is no indication that the omission was intentional or reckless. Defendant argues that Agent Whitmer's failure to include certain information from Detective Blomgren suggests that he was "willfully blind" to information that would be critical to probable cause. Objections at 3. Defendant contends that such willful blindness amounts to knowing or reckless disregard for the truth. *Id.* Willful blindness is a mental state equivalent to actual knowledge where a person "subjectively believe[s] that there is a high probability that a fact exists and . . . take[s] deliberate actions to avoid learning of that fact." *United States v. Hansen*, 791 F.3d 863, 868 (8th Cir. 2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, ___, 131 S. Ct. 2060, 2070 (2011)). Defendant does not point to facts suggesting that Agent Whitmer subjectively believed further interaction with Detective Blomgren's investigation would yield information to defeat probable cause.[8] More importantly, the record explicitly undermines any claim that Agent Whitmer took "deliberate actions to avoid learning" facts of Detective Blomgren's investigation. When Agent Whitmer learned that there had been an attempted controlled buy at Pipe Dreamz on March 21, 2014, he affirmatively requested the audio from the attempted transaction even though he knew that the attempted buy did not result in the sale of "Spice." He then summarized the contents of the audio in the warrant application. Such action on Agent Whitmer's part—that is, pursuing information about a failed controlled buy—is antithetical to a theory that he deliberately avoided potentially unhelpful

---

[8] While willful blindness contemplates subjective belief only, it is worth noting that further interaction with Detective Blomgren's investigation would have been objectively likely to yield facts beneficial to probable cause. By the time Agent Whitmer began investigating Defendant, Detective Blomgren had already received information from numerous sources that Defendant was selling controlled substances in Illinois. Such information was entirely consistent with information that C.G. provided to Agent Whitmer and, accordingly, would have bolstered the showing of probable cause.

information. While it is true that Agent Whitmer did not exhaustively seek information from Detective Blomgren's investigation, the record lacks any indication that Agent Whitmer's failure to compile more information was the result of willful blindness, recklessness or an intent to make the warrant application misleading. Instead, the omissions are more appropriately characterized as negligent, and "*Franks* does not apply to negligent" omissions. *Conant*, 2015 WL 5023715 at *4.

Defendant argues that proof of recklessness is unnecessary in this case because it can be inferred on grounds that "the material omitted would have been clearly critical to the finding of probable cause." Objections at 3 (quoting *United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010)). This argument encompasses the second prong of the *Franks* analysis, implicating the materiality of the omission to the determination of probable cause. Defendant claims that the combination of CS #2014-003's failed controlled buy, wherein a Pipe Dreamz employee stated that they did not sell "Spice," and CS #2014-002's statement that Pipe Dreamz "may have recently decided to discontinue selling ['Spice']" are sufficient to eliminate probable cause. Objections at 2-3. The court disagrees.

The inclusion of the omitted information would not undermine Agent Whitmer's statement that there was "conflicting information" about whether Pipe Dreamz sold "Spice," it would simply elaborate on it. If the application were to include the omitted information, the issuing judge would have been informed of the following regarding Pipe Dreamz selling "Spice": (1) on March 10, 2014, CS #2014-003 unsuccessfully attempted a controlled buy at Pipe Dreamz, and was told by an employee that "they did not sell these items"; (2) CS #2014-002 told officers that Pipe Dreamz "has been selling" "Spice," but "may have recently decided to discontinue selling"; (3) on March 21, 2014, CS #2014-002 unsuccessfully attempted a controlled buy at Pipe Dreamz, and was told by an employee that he "would have to come back after 4:00 pm, because 'he' [referring to Defendant] had

13

taken them [referring to "Spice"] with him last night"; and (4) C.G. told officers that if Defendant stored "Spice" at Pipe Dreamz, it would only be a small amount. This evidence paints a more complete picture, but it still amounts to "conflicting information" about whether Pipe Dreamz was selling "Spice," which is exactly what Agent Whitmer describes. Since the additional information does not substantively alter or undermine the allusion to conflicting information, it cannot fairly be said to extinguish probable cause. In any event, it certainly does not meet the heightened standard of being "clearly critical" to probable cause, which is required to infer recklessness. *See Mashek*, 606 F.3d at 928.

### C. *Representation of C.G.'s Reliability*

In his second objection, Defendant claims that Agent Whitmer recklessly misrepresented that C.G. was a reliable informant. Objections at 4. Defendant supports this position by observing that Agent Whitmer failed to specify in the warrant application whether C.G. had personal knowledge of the information she provided and what sources C.G. received her information from. *Id.* at 5. Defendant implies that, without Agent Whitmer's alleged misrepresentation of C.G.'s reliability, there would be no independent factual basis to conclude she was reliable, which would render the warrant application insufficient to support probable cause. *See id.* at 6. Therefore, Defendant objects to Judge Scoles's conclusion that Agent Whitmer's application did not contain "deliberately false and misleading statements regarding C[.]G[.]" Report and Recommendation at 17 (internal quotation marks omitted).

The court overrules Defendant's objection. Defendant does not identify specific statements about C.G. that he believes are recklessly misleading. Instead, his argument can be interpreted to challenge Agent Whitmer's overall conclusion that C.G. was reliable based on the information she provided and the facts Agent Whitmer corroborated. The search warrant application included the following information weighing on C.G.'s credibility: (1) she provided her name to Agent Whitmer—i.e. did not provide information

14

under the veil of anonymity, *see United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014) ("[W]e have long accorded known informants more credence than anonymous . . . informants: for one thing, they can be held responsible if the allegations turn out to be fabricated."); (2) she was in a relationship with Defendant for approximately one year and nine months; (3) she knew of Defendant's Iowa and Illinois residences; (4) she knew that Defendant owned Pipe Dreamz; (5) she provided the names of friends and associates of Defendant; (6) she provided the names of Defendant's parents and the Illinois town in which they lived; (7) she knew that Defendant was on probation or parole; (8) she provided proof of Facebook interactions with Defendant, wherein Defendant discussed making significant amounts of money; and (9) she described Defendant's vehicles. In addition to these details establishing her personal relationship with Defendant, C.G. provided detailed information about Defendant's involvement with purchasing, preparing and selling "Spice."

It is true that the application does not specifically state whether C.G. had personal knowledge of Defendant's drug-related activities or from whom C.G. learned the information she provided. However, the application provided abundant detail to establish that C.G. knew Defendant closely and, therefore, had credible knowledge about Defendant and his activities. Within the context of a one year and nine month relationship between C.G. and Defendant, the specific details that Defendant faults Agent Whitmer for omitting can be fairly inferred. The application provides a sufficient quantity and quality of information about C.G.'s long relationship with Defendant to support an inference that C.G. had personal knowledge of at least some of Defendant's drug-related activities. And to the extent that she did not see certain aspects of Defendant's drug-related activities with her own eyes, her long relationship and back-and-forth Facebook messaging with Defendant fairly imply that the source of her information is Defendant himself. While Defendant is correct that Agent Whitmer did not corroborate C.G.'s reports of Defendant's

unlawful activity, Agent Whitmer did corroborate facts consistent with C.G.'s relationship with Defendant: Agent Whitmer viewed Facebook messages between C.G. and Defendant, confirmed Defendant's birth date as provided by C.G., confirmed C.G.'s descriptions of the cars Defendant owned and confirmed Defendant's interactions with persons whose names C.G. provided. Corroboration of innocent details carries weight in determining an informant's credibility. *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013) ("[E]ven the corroboration of minor, innocent details can suffice to establish probable cause." (quoting *United States v. Solomon*, 432 F.3d 824, 828 (8th Cir. 2005) (quotation marks omitted))). Additionally, "[i]f information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that . . . other information that the informant provides, though uncorroborated, is also reliable." *O'Dell*, 766 F.3d at 874 (quoting *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013)) (quotation marks omitted). Based on all of the information C.G. provided to Agent Whitmer and his ability to corroborate numerous details, the court concludes that there was nothing to suggest that Agent Whitmer entertained serious doubts or had obvious reason to doubt the information C.G. provided. *See Conant*, 2015 WL 5023715 at *2 (stating that a party claiming that statements in a warrant application are reckless must show that "the affiant . . . entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported" (quoting *McIntyre*, 646 F.3d at 1114 (quotation marks omitted))). Accordingly, Agent Whitmer's representation about C.G.'s reliability was not reckless, and, consequently, the first prong of the *Franks* analysis is not satisfied.

Further, assuming arguendo that Agent Whitmer's conclusion about C.G.'s reliability was reckless, it was not material to probable cause. A bare statement of an informant's reliability is presumed to carry only marginal weight in the issuing judge's determination of probable cause. *See United States v. Barnard*, 299 F.3d 90, 93 (1st Cir.

2002) ("[An officer's] mere assertion of reliability . . . is entitled to only 'slight' weight."). However, as detailed above, Agent Whitmer provided numerous underlying facts in support of his conclusion that C.G. was reliable. Even if the warrant application omitted Agent Whitmer's stated finding of C.G.'s reliability, the facts contained within the application provided the issuing judge with sufficient information to find C.G. reliable and to find probable cause supporting the issuance of the warrant. *See O'Dell*, 766 F.3d at 873-74 (describing the "'totality of the circumstances'" standard to finding probable cause, which the issuing judge must apply with a "common sense approach and not in a hypertechnical fashion" (quoting *Solomon*, 432 F.3d at 827)). Accordingly, removal of Agent Whitmer's conclusion about C.G.'s reliability does not render the application insufficient to establish probable cause, and, consequently, the second prong of the *Franks* analysis is not satisfied.

## VI. CONCLUSION

In light of the foregoing, Defendant's Objections (docket no. 74) are **OVERRULED**; the Report and Recommendation (docket no. 70) is **ADOPTED**; and Defendant's Amended Motion to Suppress (docket no. 64) is **DENIED**.

**IT IS SO ORDERED**.

**DATED** this 24th day of September, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA