**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ROBERT CARL SHARP,

        Defendant.

No. 15-CR-31-LRR

**ORDER**

---

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

II.    **RELEVANT PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . . . . *2*

III.   **RELEVANT FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . *3*

     *A.*    *Defendant's Synthetic Drug Operation* . . . . . . . . . . . . . . . . . . . . . *3*
     *B.*    *Mr. Schwartz's Representation of Defendant* . . . . . . . . . . . . . . . . . *4*
          *1.*    *Defendant's testimony* . . . . . . . . . . . . . . . . . . . . . . . . . *4*
          *2.*    *Mr. Schwartz's testimony* . . . . . . . . . . . . . . . . . . . . . . . *5*
     *C.*    *Change of Plea Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

IV.   **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

V.    **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

     *A.*    *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
     *B.*    *Factual Objections* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*
     *C.*    *Conflict of Interest* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*
     *D.*    *Factual Basis for Pleas* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *19*
     *E.*    *Relevant Factors* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *25*

VI.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *26*

*I.  INTRODUCTION*

The matter before the court is Defendant Robert Carl Sharp's "Objections to Report
and Recommendation Regarding Motion to Withdraw Guilty Plea" ("Objections") (docket
no. 196) filed in response to United States Chief Magistrate Judge Jon S. Scoles's Report

and Recommendation (docket no. 189), which recommends that the court deny Defendant's "Motion to Withdraw Guilty Plea" ("Motion") (docket no. 173).

## II. RELEVANT PROCEDURAL HISTORY

On September 22, 2015, the grand jury returned a three-count Superseding Indictment (docket no. 99), charging Defendant with (1) conspiracy to manufacture and distribute a controlled substance, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1); and (3) possession with intent to distribute, and aiding and abetting the possession with intent to distribute, a controlled substance, in violation of 21 U.S.C. § 841(a)(1). A jury trial was scheduled to begin on October 5, 2015. *See* Amended Trial Scheduling Order (docket no. 122). On October 4, 2015, Defendant entered a Notice of Intent to Plead Guilty (docket no. 131), and, on October 5, 2015, Defendant entered pleas of guilty to all three counts of the Superseding Indictment. *See* October 5, 2015 Minute Entry (docket no. 135) (change of plea hearing); October 5, 2015 Order (docket no. 138) (accepting Defendant's guilty pleas).

From approximately December of 2013—prior to the return of the initial Indictment (docket no. 3) on March 31, 2015—through Defendant's pleas of guilty and the filing of the final Presentence Investigation Report ("PSIR") (docket no. 163), Defendant was represented by Joel Schwartz. On December 31, 2015, Michael Lahammer entered an appearance on behalf of Defendant. *See* Notice of Appearance (docket no. 160). On January 21, 2016, Mr. Schwartz withdrew from representing Defendant. *See* Joint Motion to Withdraw (docket no. 169); January 21, 2016 Order (docket no. 170).

On January 22, 2016, Defendant filed the Motion. On February 5, 2016, the government filed a Resistance (docket no. 183). On February 5, 2016, Judge Scoles held a hearing on the Motion. *See* February 5, 2016 Minute Entry (docket no. 184). On March 17, 2016, Judge Scoles issued the Report and Recommendation, recommending that

the court deny the Motion. On April 14, 2016, Defendant filed the Objections.[1] The matter is fully submitted and ready for decision.

## III. RELEVANT FACTUAL BACKGROUND

### A. Defendant's Synthetic Drug Operation

Defendant's prosecution arose from his sale of AB-FUBINACA, a controlled substance, at a head shop he operated in Iowa City, Iowa. Defendant would receive chemical shipments from suppliers, which he sprayed onto leafy substances. Defendant would then package the sprayed leafy substance (hereinafter, "synthetic drugs") into packaging that bore a label stating "not for human consumption." Despite the label, Defendant knew that his customers would smoke the synthetic drugs that he sold them and that they would experience a "disorientation" effect as a result. *See* Official Transcript of Motion to Withdraw Guilty Plea Proceedings ("Motion Hearing Transcript") (docket no. 193) at 5. Defendant does not believe that the effect from smoking the synthetic drugs was similar to the effect from smoking marijuana.

When Defendant ordered and received shipments of chemicals, he was told by his suppliers that the shipments contained THJ-011 and that such substance was legal. *See* Government Exhibit 2 (docket no. 185-1) at 1-2. Based on these representations, Defendant claims that he believed he possessed and distributed THJ-011, which he believed to be a legal substance, and was unaware that the substance he received was, in fact, AB-FUBINACA.

---

[1] The Objections were initially due on March 31, 2016. *See* Report and Recommendation at 16-17 (stating that objections are due "within fourteen . . . days" after the Report and Recommendation was issued on March 17, 2016). On March 31, 2016, the court granted Defendant an extension of time, to April 15, 2016, for filing the Objections. *See* March 31, 2016 Order (docket no. 192). Accordingly, the Objections are timely.

## B. Mr. Schwartz's Representation of Defendant

In late 2013, spurred by concerns regarding the legality and detection of his sale of synthetic drugs, Defendant retained Mr. Schwartz based on the recommendation of another shop owner who sold synthetic drugs. The parties dispute the nature and extent of the interactions between Defendant and Mr. Schwartz during the course of this representation.

### 1. Defendant's testimony

Defendant states that Mr. Schwartz "would inform [him] what products were legal to sell, what substances the [g]overnment considered analogue substances, what substances were being emergency scheduled and when, and any new laws of relevance or tactics used by the federal authorities to prosecute persons selling" synthetic drugs. Defendant's Exhibit B ("Sharp Affidavit") (docket no. 173-3) at 1.[2] Defendant states that, in February of 2014, he inquired about the legal status of THJ-011 and Mr. Schwartz told him that the substance "was not an analogue or a controlled substance and it would be legal to sell products containing THJ-011." *Id.* at 2; *see also* Motion Hearing Transcript at 9-10. Defendant states that Mr. Schwartz then requested a sample of the substance for testing. Sharp Affidavit at 2. Defendant states that, in March of 2014, Mr. Schwartz informed him that he could not have the substance tested but that Defendant should "continue what [he] was doing" while Mr. Schwartz went on vacation, and that Mr. Schwartz would address the issue when he returned. *Id.* at 3.

In June of 2014, after the government's investigation into Defendant became apparent, Defendant states that he asked Mr. Schwartz whether Mr. Schwartz could testify

---

[2] "Analogue substances," or controlled substance analogues, describe "a category of substances substantially similar to those listed on the federal controlled substances schedules," which are treated as controlled substances under federal law. *See McFadden v. United States*, __ U.S. __, __, 135 S. Ct. 2298, 2302 (2015). While Defendant was concerned with whether or not certain substances were analogues, he was charged only with controlled substance offenses. *See* Superseding Indictment (charging Defendant with three offenses involving "AB-FUBINACA, a Schedule I controlled substance")

on Defendant's behalf at an eventual trial to tell the jury that he had told Defendant that his actions involving THJ-011 were legal. *Id.* at 4. According to Defendant, Mr. Schwartz said he could not testify. *Id.* Defendant then encouraged Mr. Schwartz to contact other witnesses whom Defendant stated had given him legal advice about his synthetic drug operation. Motion Hearing Transcript at 8; Government Exhibit 2 at 5. Defendant states that Mr. Schwartz contacted the witnesses, but reported that "one of them didn't want to be involved and the other one was vague." Motion Hearing Transcript at 8.[3] Regarding the viability of a defense to the charges, Defendant states that Mr. Schwartz told him that his intent and knowledge were not relevant and further states that Mr. Schwartz "push[ed him] to enter a guilty plea." Sharp Affidavit at 4-5. Defendant states that he sent text messages and emails to Mr. Schwartz that would support an advice-of-counsel defense. *Id.*; *see also* Motion Hearing Transcript at 7. However, none were entered into the record.

### 2. *Mr. Schwartz's testimony*

Mr. Schwartz describes his representation of Defendant differently. Mr. Schwartz states that he first met with Defendant in December of 2013 due to issues stemming from Defendant's supervised release from a prior federal drug conviction. *Id.* at 10. However, at his first meeting with Defendant, Mr. Schwartz states that Defendant raised the issue of synthetic drugs. *Id.* According to Mr. Schwartz, Defendant voiced concerns about the legality of his operation because he had received attention from law enforcement in previous months and other people selling synthetic drugs had been charged with criminal offenses. *Id.* at 11. Mr. Schwartz states that, based on Defendant's concerns, Defendant chose to retain Mr. Schwartz's services "for a potential . . . future criminal case." *Id.*

---

[3] Defendant states that Mr. Schwartz did not contact a third witness who had specifically advised Defendant about how to package his products. Motion Hearing Transcript at 9. However, this witness apparently did not advise Defendant about the legality of the substances Defendant was involved with. *See* Government Exhibit 2 at 5.

While discussing synthetic drugs at the initial meeting with Defendant, Mr. Schwartz states that he cautioned Defendant with advice that Mr. Schwartz had heard from another lawyer, "that everything synthetically that causes impairment of the brain either was listed or was an analog[ue] or would be soon thereafter an analog[ue]." *Id.* Because of the risks involved and because of Defendant's criminal history, Mr. Schwartz states that he told Defendant that selling synthetic drugs "was too dangerous a game for him to play and he should stop." *Id.*

In a later interaction during his representation of Defendant, Mr. Schwartz states that Defendant inquired about the legality of THJ-011. *Id.* at 12. Mr. Schwartz states that he looked up the substance on the Drug Enforcement Agency's ("DEA") website, found no record of the substance and communicated that information to Defendant. *Id.* Mr. Schwartz states that he told Defendant that simply because it wasn't listed on the website "didn't mean it wasn't an analog[ue] of something else out there." *Id.* Mr. Schwartz states that he did not tell Defendant that it was legal to sell THJ-011. *Id.* Mr. Schwartz states that he also did not tell Defendant that it was illegal to do so, but again advised Defendant that "it's too dangerous" to be selling synthetic drugs and to "[s]top doing this." *Id.* Mr. Schwartz states that he never requested a sample of the substance for testing, that he never told Defendant that he would test substance samples and that he does not recall receiving any substance samples from Defendant, but that if he had "it would have been destroyed" because he would not want potentially illegal substances in his office. *Id.* at 13.

Regarding his representation of Defendant during the government's prosecution in the instant case, Mr. Schwartz states that he never discussed an advice-of-counsel defense with Defendant as to himself because Mr. Schwartz never advised Defendant that the substance in Defendant's possession—or the substance Defendant *thought* was in his possession—was legal. *Id.* Mr. Schwartz stated that he did contact separate witnesses

from whom Defendant told him he had received legal advice, but Mr. Schwartz determined that one was not a viable witness because he "denied telling [Defendant] that it was legal to sell these things," one did not remember Defendant and another did not return Mr. Schwartz's calls after Mr. Schwartz left "a couple messages" for him. *Id.* Based on his assessment of the case against Defendant, Mr. Schwartz expressed to Defendant that he "felt the [g]overnment would have a relatively easy time of convincing the jury of knowledge," which was the only viable issue for trial. *Id.* at 15. Mr. Schwartz states that he reached that opinion based on voluminous circumstantial evidence in the government's discovery file, including evidence that Defendant moved the synthetic drugs out of the store every evening, ordered the purported THJ-011 using the subject line "AB-FUBINACA," encrypted his communications to his suppliers, rented the storage locker where he stored the synthetic drugs under a false name and used a "dummy box" to see if later chemical shipments in the same packaging would be seized by law enforcement. *See id.* Mr. Schwartz states that, in the lead-up to trial, he had numerous discussions with Defendant about the evidence against him and recent case law on the issue and that he advised Defendant that it would be in his best interest to plead guilty. *Id.* Mr. Schwartz stated that he discussed the court's "willful blindness" jury instruction with Defendant and that Defendant "agreed with [Mr. Schwartz] that it was in his best interest to plead guilty and that the [g]overnment could prove that he should have known that what he was doing was illegal, which, in turn, became a willful blindness based upon his actions." *Id.*

### C. Change of Plea Hearing

On October 4, 2015, the day before Defendant's jury trial was scheduled to begin, Defendant filed the Notice of Intent to Plead Guilty. On October 5, 2015, Defendant entered pleas of guilty to all three counts of the Superseding Indictment. *See* October 5, 2015 Minute Entry. During the change of plea hearing, Judge Scoles engaged in a colloquy with Defendant about the factual basis for his guilty pleas to each charge. When

admitting to the factual basis for Count 2, Defendant stated that he did not know that the substance in his possession was AB-FUBINACA and did not know that it was a controlled substance. However, after further discussion between Judge Scoles and the parties, Defendant satisfied the knowledge component based on a willful blindness theory:

> THE COURT: I haven't read *McFadden*, Mr. Chatham, but . . . it looks like it would be necessary either to prove that the defendant knew that he was in possession of AB-FUBINACA but didn't know that it was subject to federal drug laws or that he did not know that he was in possession of AB-FUBINACA but knew that the substance that was in his possession was subject to federal drug laws. If he claims that he had some other substance in his possession and claims that he didn't know it was subject to federal drug laws, does that establish a factual basis?
>
> MR. CHATHAM: It would not, Your Honor, but I think there's – I think the theory here would be the willful blindness, so if . . . a defendant knows that he possessed some substance, somebody may have told him it was THJ-011, but he . . . believed there was a high probability that the substance that he either conspired to distribute or possessed were, in fact, subject to federal drug laws but took deliberate actions to avoid learning the true identity of those substances, that that would suffice for purposes of knowledge, so –
>
> THE COURT: What sort of factual basis needs to be laid with respect to willful blindness? Does the defendant have to admit that he believed that there was a high probability that the substances were subject to federal drug laws but took deliberate actions to avoid learning whether or not they were?
>
> MR. CHATHAM: I believe that would suffice, Your Honor.
>
> THE COURT: And Mr. Schwartz, do you believe Mr. Chatham's accurately described the law in this regard?

> MR. SCHWARTZ: . . . [W]e are in agreement with that, Your Honor, and we believe that that is the factual basis that Mr. Sharp can admit to.
>
> . . .
>
> THE COURT: Did you believe that the substance in your possession – and right now, I guess we're talking about the substances that were found in your residence in Center Point. Did you believe there was a high probability that those – that substance or substances were subject to federal drug laws?
>
> THE DEFENDANT: Under some federal drug law, yes.
>
> THE COURT: And did you take deliberate action to avoid learning the true identity of the substance and whether or not, in fact, it was the subject of a federal drug law?
>
> THE DEFENDANT: By not getting it tested, yes, yes, I did.

Official Transcript of Change of Plea Hearing ("Change of Plea Transcript") (docket no. 165) at 16-19. Defendant proceeded to plead guilty to Count 3, which, like Count 2, charged Defendant with possession with intent to distribute AB-FUBINACA. *See id.* at 20-23. Defendant again admitted to being willfully blind as to a different inventory of the substance in his possession, albeit without qualifying that he failed to have the substance tested. *See id.* at 20-21.

## IV. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting

that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). The court's duty of de novo review extends even to the magistrate judge's credibility determination. *See Taylor v. Farrier*, 910 F.2d 518, 521 (8th Cir. 1990). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *See Lothridge*, 324 F.3d at 601. Accordingly, the court shall review the disputed portions of the Report and Recommendation de novo.

## V. ANALYSIS

In the Motion, Defendant seeks to withdraw his guilty pleas on two grounds: (1) Mr. Schwartz's representation of Defendant created "an actual conflict of interest" and Mr. Schwartz failed to advise Defendant of an advice-of-counsel defense because of such conflict and (2) no factual basis was established for the pleas. *See* Motion at 1-2. Defendant argues that the alleged deficiencies provide "a fair and just reason" for permitting him to withdraw his guilty pleas and that relevant additional factors further support withdrawal of the pleas. *See* Brief in Support of the Motion (docket no. 173-1) at 14-15.

In the Report and Recommendation, Judge Scoles recommends that the Motion be denied. Judge Scoles concludes that the record does not support a finding that Mr. Schwartz had a conflict of interest and further concludes that there are no grounds for an advice-of-counsel defense. *See* Report and Recommendation at 10-11. Judge Scoles also concludes that there is a factual basis for Defendant's guilty pleas based on Defendant's willful blindness to the fact that the substance in his possession was subject to federal law.

*See id*. at 15. On these grounds, Judge Scoles finds that Defendant failed to establish a fair and just reason for withdrawing his guilty pleas. *Id*. at 16. As to the additional relevant factors, Judge Scoles finds that "at least two of the three factors weigh against granting the [M]otion." *Id*.

In the Objections, Defendant objects to some of Judge Scoles's factual findings and contests all of Judge Scoles's legal conclusions. Accordingly, the court shall review those portions of the Report and Recommendation de novo.

### A. Applicable Law

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "The 'fair and just' standard is a liberal one, but it does not create an automatic right to withdraw a plea." *United States v. Smith*, 422 F.3d 715, 723 (8th Cir. 2005) (quoting *United States v. Wicker*, 80 F.3d 263, 266 (8th Cir. 1996)). "[T]he plea of guilty is a solemn act not to be disregarded because of belated misgivings about the wisdom of the same." *United States v. Murphy*, 572 F.3d 563, 568 (8th Cir. 2009) (quoting *United States v. Thompson*, 906 F.2d 1292, 1298 (8th Cir. 1990)). "Even if . . . a fair and just reason exists, before granting the motion [to withdraw a guilty plea] a court must consider 'whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion.'" *United States v. Heid*, 651 F.3d 850, 853-54 (8th Cir. 2011) (quoting *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006)). Defendant bears the burden of proving that "the recognized justifications should permit a withdrawal" of his guilty pleas. *Smith*, 422 F.3d at 723.

## B. *Factual Objections*

In the Report and Recommendation, Judge Scoles credits Mr. Schwartz's testimony over Defendant's testimony in recommending that the court deny the Motion. *See* Report and Recommendation at 10-11. Defendant objects to Judge Scoles's factual findings insofar as they rely on the credibility of Mr. Schwartz's testimony. *See* Objections at 2-5. Defendant challenges Mr. Schwartz's credibility on five grounds, which the court shall address in turn.

Defendant's first factual objection arises from purportedly conflicting testimony between Mr. Schwartz and Defendant as to whether Mr. Schwartz explicitly advised Defendant that it was legal to sell THJ-011. Objections at 2. In his affidavit, Defendant claims that Mr. Schwartz affirmatively told him that it would be legal to sell THJ-011. Sharp Affidavit at 2. However, when asked on cross examination at the motion hearing whether Mr. Schwartz told him it was legal to sell THJ-011, Defendant's response was equivocal: Defendant testified that Mr. Schwartz told him such substances "weren't controlled substances and . . . weren't analog[ue] substances," but he did not testify that Mr. Schwartz advised him that they were legal. Motion Hearing Transcript at 6. On re-direct examination, Defendant again testified that "Mr. Schwartz advised [him] that that product was not controlled and not an analog[ue]," but did not state that Mr. Schwartz advised him that the product was legal. *Id.* at 10. In fact, Defendant's testimony on this matter is consistent with Mr. Schwartz's testimony, where he stated that he couldn't find THJ-011 "listed anywhere specifically," but that he never specifically advised Defendant that it was legal or illegal to sell the substance. *Id.* at 12. Instead, lacking sufficient information "to make any sort of a call" as to the substance's legality, Mr. Schwartz stated that he cautioned Defendant that "it's too dangerous" and he should "[s]top doing this." *Id.*

The court credits Defendant's testimony over his written affidavit, *cf. Garcia-Martinex v. Cty. & Cnty. of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004) (in the civil context, "[w]hen the 'key factual issues' . . . turn on the 'credibility' and 'demeanor' of the witness, we prefer the finder of fact to observe live testimony of the witness"), and finds, consistent with both Defendant and Mr. Schwartz's testimony at the motion hearing, that Mr. Schwartz did not specifically advise Defendant that THJ-011 was legal. Instead, consistent with Mr. Schwartz's testimony, the court finds that Mr. Schwartz "look[ed] it up on a DEA website . . . . found no record of it anywhere and . . . told him so," but warned Defendant that it was "too dangerous" and to "[s]top doing this." *See* Motion Hearing Transcript at 12. The court's finding is further supported by Government's Exhibit 2, wherein Defendant informs Mr. Schwartz of other lawyers that had purportedly informed him that the substance was legal but does not mention any interaction in which Mr. Schwartz informed him that the substance was legal. *See* Government Exhibit 2 at 5-6.

Defendant's second, third and fourth factual objections arise from purported inconsistencies between Mr. Schwartz's testimony at the motion hearing and the billing records from Mr. Schwartz's representation of Defendant. *See* Objections 3-5; *see also* Defendant's Exhibit C (docket no. 196-1) (billing records). Defendant initially claims that the mere existence of the billing records contradicts Mr. Schwartz's testimony that he does "[n]ot really" keep "time records" "as far as specific dates, times, what was discussed." *See* Objections at 3; *see also* Motion Hearing Transcript at 19. However, at the motion hearing, Defendant corroborated Mr. Schwartz's testimony by stating that Mr. Schwartz never provided him with accounting of payments made or services performed. *See id.* at 10. Mr. Schwartz further testified that time records are not required under "the state of Missouri bar rules." *Id.* at 19. There was no testimony regarding when Mr. Schwartz prepared the billing records provided to Defendant or what method Mr. Schwartz used to

compile the billing records. In short, the court lacks sufficient context regarding Mr. Schwartz's preparation of the billing records submitted as Defendant's Exhibit C to conclude that they contradict Mr. Schwartz's testimony about "time records" or otherwise make Mr. Schwartz's testimony less credible.

Defendant proceeds to identify a number of purported inconsistencies between Mr. Schwartz's testimony and his billing records. Defendant points out that the billing records fail to account for basic activities that Mr. Schwartz testified to, that the records contradict Mr. Schwartz's account of his first meeting with Defendant and that the records fail to specifically reflect Mr. Schwartz's investigation of an advice-of-counsel defense as to the various attorneys Defendant stated he had consulted. *See* Objections at 3-5. The court finds that Defendant overstates the significance of these purported inconsistencies. To accept Defendant's argument that the billing records contradict Mr. Schwartz's testimony would require the court to speculate about the idiosyncracies of Mr. Schwartz's law practice—such as whether Mr. Schwartz bills for initial consultations with clients so that they would appear on billing records, whether Mr. Schwartz contemporaneously reviews all mailings sent to him from clients rather than adding them to the case file for subsequent review, how specifically Mr. Schwartz describes his activity in the billing records, and so on. The court declines to speculate in the manner urged by Defendant and does not interpret the billing records to weigh adversely on Mr. Schwartz's credibility. *Cf. United States v. Walton*, No. 07-CR-14-LRR, 2007 WL 2301252, at *4 (N.D. Iowa Aug. 8, 2007) (declining to rely on a defendant's speculation when making credibility determinations in the context of a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978)).

Defendant's fifth factual objection takes issue with Judge Scoles's characterization that Mr. Schwartz "represented Defendant 'years ago' in an unrelated federal drug case." Objections at 5; *see also* Report and Recommendation at 4 n.2. Defendant implies that

Mr. Schwartz was misleading when he testified that he represented Defendant "years ago." *See* Objections at 5. However, Judge Scoles's characterization aside, Mr. Schwartz merely testified that Defendant had "a case years ago sometime in the early 2000s," but that Mr. Schwartz only "got involved after the fact." Motion Hearing Transcript at 18. Mr. Schwartz's testimony is entirely consistent with Defendant's report of the docket for that case, which apparently began in 2003 and in which Mr. Schwartz became involved in 2014. Therefore, the court finds that Mr. Schwartz's testimony regarding his involvement in Defendant's prior case does not negatively impact his credibility.

After conducting a de novo review of Judge Scoles's credibility finding based on the record before the court, the court finds that Mr. Schwartz is a credible witness and shall rely on his testimony accordingly. *See Taylor*, 910 F.2d at 521.

### C. Conflict of Interest

In the Report and Recommendation, Judge Scoles credits Mr. Schwartz's testimony that he did not advise Defendant that it was legal to possess or distribute THJ-011 and, therefore, concluded that there was no viable advice-of-counsel defense that would create a conflict of interest. *See* Report and Recommendation at 10. Defendant objects to Judge Scoles's conclusion on the grounds that an advice-of-counsel defense does not necessarily require a showing that counsel specifically advised a defendant that his actions were legal. *See* Objections at 6.

"[T]he right to counsel's undivided loyalty is a critical component of the right to assistance of counsel . . . ." *United States v. Washburn*, 728 F.3d 775, 785 (8th Cir. 2013). A conflict of interest may arise when counsel is placed in the situation of being a material witness to his client's defense. *See, e.g.*, *United States v. Merlino*, 349 F.3d 144, 152 (3d Cir. 2003) (observing that a fact which "could have led to [counsel] being called as a witness was a . . . source of potential conflict, as it is often impermissible for an attorney to be both an advocate and a witness"). Correspondingly, where counsel fails to

pursue a viable advice-of-counsel defense that could require counsel to testify, a conflict may arise. *See United States v. Evanson*, 584 F.3d 904, 913-14 (10th Cir. 2009) (observing that an advice-of-counsel defense may implicate counsel in a defendant's wrongdoing, which could motivate counsel "to discourage" the defendant from pursuing such defense); *see also Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004) (assuming that counsel's failure to pursue an advice-of-counsel defense requiring counsel to testify creates a conflict of interest, citing *Merlino*). However, no conflict arises if counsel simply declines to pursue an advice-of-counsel defense that is meritless. *See United States v. Jones*, 662 F.3d 1018, 1025-26 (8th Cir. 2011) (stating that the right to conflict-free representation "is not violated by . . . disagreements over strategy because there is no 'right to an attorney who will docilely do as she is told or advance meritless legal theories'" (quoting *United States v. Rodriguez*, 612 F.3d 1049,1055 (8th Cir. 2010))). A meritorious advice-of-counsel defense requires a defendant to "show that he: (i) fully disclosed all material facts to his attorney before seeking advice; and (ii) actually relied on his counsel's advice in good faith belief that his conduct was legal." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006). An advice-of-counsel defense is not established if a defendant merely shows that "he consulted an attorney in connection with a particular transaction." *Id.* at 896-97.

As noted above, the court finds that Mr. Schwartz neither told Defendant that THJ-011 was legal nor told Defendant that it was necessarily illegal. Instead, Mr. Schwartz told Defendant that, despite the substance not appearing on the DEA's website, working with the substance was "too dangerous" and Defendant should "[s]top doing this." Motion Hearing Transcript at 12. Although the fact that Mr. Schwartz did not advise Defendant that the substance was legal may not necessarily defeat an advice-of-counsel defense, the court concludes that Mr. Schwartz's communications with Defendant do not give rise to a meritorious advice-of-counsel defense for the following reasons.

First, contrary to Defendant's claim that "[t]he first element is not disputed," Objections at 7, Defendant cannot be understood to have disclosed all material facts to Mr. Schwartz. Defendant did not or could not accurately disclose to Mr. Schwartz what substance Defendant possessed. Defendant represented to Mr. Schwartz that he possessed THJ-011; however, he in fact possessed AB-FUBINACA. Additionally, even if Defendant was indeed correct when he informed Mr. Schwartz that he possessed THJ-011, Mr. Schwartz would nevertheless require additional facts to reach any definitive conclusion as to the substance's legality. On the information provided to Mr. Schwartz, he could (and did) look up the named substance to see whether it was listed as a controlled substance. However, provided only with the name of the substance, Mr. Schwartz could not accurately determine whether it was a controlled substance analogue. *See* 21 U.S.C. § 802(32)(A) (defining a controlled substance analogue as a substance having (1) a chemical structure that "is substantially similar to the chemical structure of a controlled substance" or (2) "has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than" the effect of a controlled substance); *see also* Motion Hearing Transcript at 12 (Mr. Schwartz testifying that he did not have enough information to determine whether THJ-011 was a controlled substance analogue). There is no credible evidence in the record that Defendant disclosed any information about the chemical structure of the substance or its effect on the nervous

17

system.[4]  Therefore, the court finds that Defendant failed to disclose all material facts to Mr. Schwartz as required for an advice-of-counsel defense.

Second, even if Defendant had disclosed all of the material facts, he did not actually rely on Mr. Schwartz's advice.  Despite Mr. Schwartz declining to definitively advise whether THJ-011 was legal or illegal, his advice to Defendant was unequivocal: "this is too dangerous of a game for [Defendant] to play and [Defendant] should stop."  Motion Hearing Transcript at 11.  Defendant did not rely on Mr. Schwartz's advice and continued to possess what he purportedly believed to be THJ-011.  In other words, Defendant merely consulted Mr. Schwartz without heeding or relying on his advice.  *See Rice*, 449 F.3d at 896-97 ("[A] defendant is not immunized from criminal prosecution merely because he consulted an attorney in connection with a particular transaction.")  Absent any actual reliance on Mr. Schwartz's advice, Defendant cannot state a viable advice-of-counsel defense.  *See id.* at 897 (requiring that a defendant "actually rel[y] on his counsel's advice in the good faith belief that his conduct was legal").  Therefore, the court finds that Defendant has not stated a basis for a viable advice-of-counsel defense.

Defendant's arguments regarding an advice-of-counsel defense revolve largely around his assertion that the conflicting testimony about the factual basis for such a defense

---

[4] Defendant claims that he mailed a sample of the substance and "lab sheets showing the CAS number" to Mr. Schwartz in February of 2014 for the purpose of having Mr. Schwartz submit the substance for testing.  Sharp Affidavit at 2.  However, Mr. Schwartz testified that, although Defendant had asked Mr. Schwartz to have the substance tested, Mr. Schwartz informed Defendant that he could not do so.  Motion Hearing Transcript at 13.  Mr. Schwartz does not recall receiving a sample of the substance and did not receive any "lab reports" from Defendant.  *Id.* at 13, 14.  An attorney who shares an office with Mr. Schwartz likewise does not recall receiving a substance sample from Defendant.  *Id.* at 21 (testimony of Nathan Swanson).  On the record before it, the court credits Mr. Schwartz's version of these events and finds that, even if Defendant mailed a sample of the substance, Mr. Schwartz neither requested nor received it.  Therefore, he could not reasonably be expected to know the chemical structure of the substance or its effect on the nervous system.  *See* 21 U.S.C. § 802(32)(A).

"is for the trial jury to resolve." Objections at 6; *see also id.* at 7 ("If the jury credits Mr. Schwartz . . . ."). However, in the context of a motion to withdraw guilty pleas, it is Defendant's burden to prove that a fair and just reason exists for withdrawing the guilty pleas, not merely to prove the existence of triable issues for the jury. *See* Fed. R. Crim. P. 11(d)(2)(B) (stating that a defendant can withdraw a guilty plea only if "the defendant can show a fair and just reason"); *see also Smith*, 422 F.3d at 723. Defendant has not carried his burden of proving that his communications with Mr. Schwartz established a viable advice-of-counsel defense. And, because there is no viable advice-of-counsel defense that would put Mr. Schwartz in a position to testify as a witness on Defendant's behalf, Defendant has not stated any conflict of interest amounting to a fair and just reason for withdrawing his guilty pleas. Accordingly, the court shall deny the Motion to the extent Defendant seeks to withdraw his guilty pleas on the grounds of a conflict of interest.

### D. Factual Basis for Pleas

In the Report and Recommendation, Judge Scoles concluded that a factual basis was established for Defendant's guilty pleas to each count of the Superseding Indictment, based on the theory of willful blindness. *See* Report and Recommendation at 15. Defendant objects to Judge Scoles's conclusion on the grounds that: (1) his admissions at the change of plea hearing did not establish willful blindness, *see* Objections at 14; (2) his admissions were made in "reliance on the incorrect advice of Mr. Schwartz," *id.* at 12; and (3) there is a factual dispute as to whether Defendant sought testing of the substance in question, despite his admission at the change of plea hearing, *see id.* at 14.

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "A factual basis for a plea of guilty is established when the court determines there is sufficient evidence at the time of the plea upon which the court may reasonably determine that the defendant likely committed the offense." *United States v. Green*, 521 F.3d 929, 933 (8th Cir. 2008)

(quoting *United States v. Marks*, 38 F.3d 1009, 1012 (8th Cir. 1994)) (alteration omitted). "Facts obtained from 'the prosecutor's summarization of the plea agreement and the language of the plea agreement itself, a colloquy between the defendant and the district court, and the stipulated facts before the district court, are sufficient to find a factual basis for a guilty plea.'" *United States v. Scharber*, 772 F.3d 1147, 1150 (8th Cir. 2014) (quoting *United States v. Bowie*, 618 F.3d 802, 810 (8th Cir. 2010)).

As the United States Supreme Court has recognized, willful blindness defines a mens rea capable of substituting for "knowingly" or "willfully" in a criminal offense:

> The doctrine of willful blindness is well established in criminal law. Many criminal statutes require proof that a defendant acted knowingly or willfully, and courts applying the doctrine of willful blindness hold that defendants cannot escape the reach of these statutes by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances.

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 131 S. Ct. 2060, 2068-69 (2011); *see also United States v. Florez*, 368 F.3d 1042, 1044 (8th Cir. 2004) (stating that, if "a defendant's failure to investigate is equivalent to 'burying one's head in the sand,' the jury may consider willful blindness as a basis for knowledge"). Willful blindness has "two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech Appliances, Inc.*, 131 S. Ct. at 2070. Stated differently, willful blindness exists "if the defendant was presented with facts that put [him] on notice that criminal activity was particularly likely and yet []he intentionally failed to investigate those facts." *See United States v. Hansen*, 791 F.3d 863, 870 (8th Cir. 2015) (quoting *Florez*, 368 F.3d at 1044).

Among other necessary elements not at issue here, to establish a factual basis for his pleas of guilty, Defendant was required to admit that he knowingly possessed a

controlled substance. *See* Superseding Indictment at 2 (Counts 2 and 3); *see also* 21 U.S.C. § 841(a)(1) (statute under which Defendant was charged, making it unlawful to "knowingly or intentionally" possess a controlled substance with intent to distribute). Defendant was charged specifically with possessing AB-FUBINACA with intent to distribute. *See* Superseding Indictment at 2. Establishing that Defendant possessed AB-FUBINACA with intent to distribute does not require that he knew (or was willfully blind to the fact) that the substance he possessed was, in fact, AB-FUBINACA. Instead, it requires only that he knew (or was willfully blind to the fact) that he was in possession of *some* controlled substance or *some* controlled substance analogue. *See McFadden v. United States*, __ U.S. __, __, 135 S. Ct. 2298, 2304-05 (2015) (stating that the "knowledge requirement" is met if "the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was" and that the framework extends to controlled substance analogues). Defendant argues that the knowledge element was not satisfied because he believed he possessed THJ-011 instead of AB-FUBINACA, and he did not believe THJ-011 to be a controlled substance or an analogue. *See* Objections at 11-12.

At the change of plea hearing, Judge Scoles asked Defendant whether he "believe[d] there was a high probability that . . . [the] substance or substances were subject to federal drug laws," to which Defendant responded, "[u]nder some federal drug law, yes." Change of Plea Transcript at 19. Defendant's current argument that he did not believe the substance in his possession was a controlled substance or an analogue contradicts this admission. The court credits Defendant's admission at the change of plea hearing over his present argument. Notably, Defendant has "presented no convincing evidence to establish that his prior admissions" were untrue, *see United States v. Cruz*, 643 F.3d 639, 643 (8th Cir. 2011), and the government has rebutted Defendant's assertion of lack of knowledge at the motion hearing, wherein it elicited testimony from Defendant that he knew the

substance in his possession caused "disorientation," Motion Hearing Transcript at 5. Such "disorientation" is emblematic of a controlled substance analogue, which is in part defined by its effect on the nervous system. *See* 21 U.S.C. § 802(32)(A)(ii). Further, the government elicited testimony from Mr. Schwartz that the government's discovery file included evidence that Defendant: (1) refused to store the substance in his shop because he was worried about being raided, (2) purchased the substance in emails bearing the subject line "AB-FUBINACA," (3) stored the substance in a locker that he rented under a pseudonym and (4) included "not for human consumption" labels on the substance's packaging despite his awareness that people would smoke the substance. Motion Hearing Transcript at 15. Therefore, based on Defendant's admission at the change of plea hearing and his failure to convincingly challenge the truthfulness of those admissions, the court finds that there was a factual basis for the first element of willful blindness, which was established by Defendant's admission that he subjectively believed that there was a high probability that the substance at issue was regulated "[u]nder some federal drug law," which can be understood in context to refer to the Controlled Substances Act or the Controlled Substance Analogue Enforcement Act of 1986.

Judge Scoles then asked Defendant whether he took "deliberate action to avoid learning the true identity of the substance and whether or not, in fact, it was the subject of a federal drug law," to which Defendant responded, "[b]y not getting it tested, yes, yes, I did." Change of Plea Transcript at 19. Defendant argues that his admission does not reflect his intentional failure to confirm his belief that the substance was probably a controlled substance or analogue. *See* Objections at 14. Instead, Defendant characterizes his admission as describing his intentional "[f]ailure to test the substance to confirm that it was THJ-011," which Defendant believed to be legal. *Id.* However, Judge Scoles specifically asked Defendant if he took "deliberate action to avoid learning . . . whether or not, in fact, [the substance in Defendant's possession] was the subject of a federal drug

law." Defendant answered in the affirmative, admitting that he took deliberate action to avoid knowledge that the substance—whatever its name—was illegal. Therefore, a factual basis for Defendant's guilty pleas was established at the change of plea hearing.

Defendant argues, however, that his admission was invalid for two reasons: (1) he made the admission based on erroneous advice from Mr. Schwartz, and (2) there is a factual dispute as to whether he sought testing despite his denial at the change of plea hearing. *See* Objections at 12, 14.

As to the first argument, Defendant claims that failing to have the substance tested "to verify" that it was THJ-011 does not establish willful blindness—even though he concedes that it "would certainly be relevant"—and that Mr. Schwartz "was inaccurate" in telling him otherwise. *Id.* at 10.[5] However, as the court noted above, the record

---

[5] Defendant does not characterize his criticism of Mr. Schwartz's purported advice as a claim of ineffective assistance of counsel. *See generally* Objections at 10-11. However, to the extent that Defendant's argument may be viewed as such, the court finds that it lacks merit for failure to establish prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (requiring a showing of deficient performance and prejudice to state a claim of ineffective assistance of counsel); *id.* at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). In the guilty plea context, to show prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1103 (8th Cir. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (alteration omitted). At the motion hearing, Mr. Schwartz testified regarding voluminous evidence in the government's discovery file that would support a factual basis for knowledge or willful blindness. *See* Motion Hearing Transcript at 15. The court recognizes that Mr. Schwartz's testimony about that evidence is not presently before the court on the issue of the factual basis actually established at the change of plea hearing. *See Green*, 521 F.3d at 933. However, Defendant's knowledge of such evidence is fatal to any suggestion that he pled guilty solely based on Mr. Schwartz's allegedly deficient advice about testing the substance. Therefore, the court finds that Defendant cannot show a reasonable probability that he would have gone to trial but for Mr. Schwartz's advice regarding substance testing.

reflects that Defendant subjectively believed that there was a high probability that the substance in his possession was a controlled substance or controlled substance analogue. Therefore, the issue is not whether Defendant could have "verified" that the substance was or was not THJ-011, because his subjective belief of whether the substance was THJ-011 is not controlling on the willful blindness inquiry in this case. Instead, the controlling issue is whether Defendant could have determined that the substance—whether it was THJ-011 or something else—was a controlled substance or controlled substance analogue. Defendant had a subjective belief that there was a high probability that it was, but he intentionally failed to investigate that fact. Such deliberate inaction provides a basis for willful blindness and Mr. Schwartz was not incorrect in advising Defendant as much. *See Hansen*, 791 F.3d at 870. Therefore, Defendant's challenge to the factual basis of his guilty pleas on this ground shall fail.

As to the second argument, Defendant claims that the factual dispute regarding whether Defendant sent a substance sample for testing "should be resolved in favor of [Defendant], with the jury ultimately determining the facts . . . ." Objections at 14-15. However, at the change of plea hearing, Defendant knowingly and voluntarily waived his right to a jury trial. *See* Change of Plea Transcript 9-10. Having done so, the burden is on Defendant at this stage to state a fair and just reason for withdrawing his guilty pleas, as the court noted above. *See* Fed. R. Crim. P. 11(d)(2)(B) (stating that a defendant can withdraw a guilty plea only if "the defendant can show a fair and just reason"); *see also Smith*, 422 F.3d at 723. Having reviewed the record, the court cannot conclude that Defendant has met his burden in this regard. Therefore, his challenge to the factual basis of his guilty pleas on this ground shall fail.

Accordingly, the court finds that Defendant has not stated a fair and just reason for withdrawing his guilty pleas on account of any deficiencies with the factual basis for his

guilty pleas, and the court shall deny the Motion to the extent Defendant seeks to withdraw his guilty pleas for lack of a factual basis.

### E. Relevant Factors

Because Defendant has failed to establish a fair and just reason for withdrawing his guilty pleas, the court need not address the additional factors relevant to granting a motion to withdraw guilty pleas. *See Smith*, 422 F.3d at 724. Nevertheless, the court finds that the factors do not support Defendant's withdrawal of his guilty plea.

First, while Defendant asserts his legal innocence to the charge based on his lack of knowledge, such assertion is undermined by Defendant's admission that he knew the substance to "cause a disorientation" and "knew that people would use [the substance] for that." *See* Motion Hearing Transcript at 5.

Second, the court finds the three and one-half months between Defendant's entry of the guilty plea and the Motion constitutes a significant delay. Defendant argues that the delay can be explained by Mr. Schwartz's purported conflict of interest and Defendant's hiring of new counsel. Objections at 16. However, the court observes that Defendant hired new counsel only after the draft PSIR was filed, which put him on notice of his potential sentencing exposure, and Defendant filed the Motion only after the final PSIR was filed to reflect Defendant's potential sentencing range under the United States Sentencing Guidelines. *Compare* Draft PSIR (docket no. 154) (filed December 9, 2015), *with* Notice of Attorney Appearance (entered December 31, 2015); *compare* Final PSIR (issued January 13, 2016), *with* Motion (filed January 22, 2016). In this regard, even if the delay is partially explainable by Mr. Schwartz's purported conflict of interest and Defendant's hiring of new counsel, it also correlates with Defendant's discovery of his potential prison term, which is not a justifiable reason for a delay. *Cf. United States v. Bowie*, 618 F.3d 802, 811 (8th Cir. 2010) ("Post-plea regrets by a defendant caused by contemplation of the prison term he faces are not a fair and just reason for a district court

to allow a defendant withdraw a guilty plea." (quoting *United States v. Davis*, 583 F.3d 1081, 1089 (8th Cir. 2009))).

Third, the government has not specifically argued that it would be prejudiced by the delay, and Defendant argues that no such prejudice can be shown. Objections at 16-17. While the court finds that some prejudice is likely, given the substantial delay, the court does not find such prejudice to be significant and does not rely on it while weighing the factors.

In considering the factors in their totality, however, the court concludes that they do not support permitting Defendant to withdraw his guilty plea, even if Defendant had shown a fair and just reason above.

### VI. CONCLUSION

In light of the foregoing, the Objections (docket no. 196) are **OVERRULED** and the Report and Recommendation (docket no. 189) is **ADOPTED**. Defendant's Motion to Withdraw Guilty Plea (docket no. 173) is **DENIED**.

**IT IS SO ORDERED**.

**DATED** this 4th day of May, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA